UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIANLIN ZHANG,

                    Plaintiff,

          v.

PAMELA BONDI, in her official capacity as
Attorney General of the United States, KRISTI
NOEM, in her official capacity as Secretary of the
Department of Homeland Security, JOSEPH B.
EDLOW, in his official capacity as Acting
Director of U.S. Citizenship and Immigration,
U.S. CITIZENSHIP AND IMMIGRATION
SERVICES, and ZORAIDA GOMEZ, in her
official capacity as Field Office Director of the
USCIS (New York Field Office),

                    Defendants.

No. 25 Civ. 4838 (AT) (HJR)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**


                              JAY CLAYTON
                              United States Attorney
                              Southern District of New York
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Tel: (212) 637-2713
                              Email: Mark.Osmond@usdoj.gov


MARK OSMOND
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ...................................................................................................2

    A. Governing Statutory Provisions....................................................................2

        1. Adjustment of Status and Limits on Judicial Review ................................2

        2. Exception to the Bar on Judicial Review Applies Only to Petitions for Review Filed with the Courts of Appeals ............................................................6

    B. Governing Standards for Dismissal of the Complaint ........................................6

        1. Dismissal Under Rule 12(b)(1).............................................................6

        2. Dismissal Under Rule 12(b)(6).............................................................8

    C. Factual Background ..................................................................................9

ARGUMENT ......................................................................................................4

    A.   This Case is Moot and Must Be Dismissed ................................................10

    B.   Even if the Case Were Not Moot, the Court Would Lack Jurisdiction Given the Jurisdiction-Stripping Provision of 8 U.S.C. § 1252(a)(2)(B)(i) ................................12

    C.   Zhang Fails to State a Claim under the APA ..............................................13

CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abuzeid v. Mayorkas,*
   62 F. 4th 578 (D.C. Cir. 2023) ................................................................................................. 4

*APWU v. Potter,*
   343 F.3d 619 (2d Cir. 2003) ................................................................................................... 7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................................................ 8

*Aydemir v. Garland,*
   No. 22-CV-100 (PAC), 2022 WL 4085846 (S.D.N.Y. Sept. 6, 2022) .......................... 15, 16, 17

*Belem v. Jaddou,*
   No. 21-cv-4093 (VEC), 2022 WL 1664332 (S.D.N.Y. May 25, 2022) .................................... 6

*Bell Atl. Corp. v. Twombly,*
   550 U.S.  (2007) ..................................................................................................................... 8

*Bondarenko v. Chertoff,*
   No. 07 mc 00002 (WMS), 2007 WL 2693642 n.7 (W.D.N.Y. Sep. 11, 2007) ........................ 17

*Britkovyy v. Mayorkas,*
   60 F. 4th 1024 (7th Cir. 2023) ............................................................................................... 4

*Commandant v. Dist. Dir., Miami Dist. (S24), USCIS,*
   No. 21-10372, 2024 WL 3565390 (11th Cir. July 29, 2024) ................................................... 4

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.,*
   790 F.3d 411 (2d Cir. 2015) ................................................................................................... 7

*Cruz-Miguel v. Holder,*
   650 F.3d 189 (2d Cir. 2011) ................................................................................................... 6

*D'Ambrosio v. Scott,*
   – F. Supp. 3d –, 2025 WL 1502936 (D. Vt. May 23, 2025) ..................................................... 3

*De Oliveira v. Barr,*
   No. 19 Civ. 1508 (ENV), 2020 WL 1941231 (E.D.N.Y. Apr. 22, 2020) ................................ 15

*DiFolco v. MSNBC Cable L.L.C.,*
   622 F.3d 104 (2d Cir. 2010) ................................................................................................... 9

*Elnaggar v. Garland,*
  No. 23-CV-10850 (GS), 2025 WL 70386 (S.D.N.Y. Jan. 10, 2025) .......................................... 16

*Espin v. Gantner,*
  381 F. Supp. 2d 261 (S.D.N.Y. 2005) ........................................................................... 13, 15

*Fangfang Xu v. Cissna,*
  434 F. Supp. 3d 43 (S.D.N.Y. 2020) ................................................................................. 15

*Fox v. Bd. Of Trs. Of State Univ. of N.Y.,*
  42 F.3d 135 (2d Cir. 1984) ................................................................................................ 7

*Gomez v. Nielsen,*
  301 F. Supp. 3d 91 (D.D.C. 2018) .................................................................................... 11

*Gong v. Duke,*
  282 F. Supp. 3d 566 (E.D.N.Y. 2017) .......................................................................... 15, 18

*Guadagno v. Wallack Ader Levithan Assoc.,*
  932 F. Supp. 94 (S.D.N.Y. 1996) ........................................................................................ 7

*Hassoun v. Searls,*
  976 F.3d 121 (2d Cir. 2020) ............................................................................................... 7

*Hatchet v. Andrade,*
  106 F. 4th 574 (6th Cir. 2024) ........................................................................................... 4

*Hesse v. Godiva Chocalatier, Inc.,*
  463 F. Supp. 3d 453 (S.D.N.Y. 2020) ................................................................................. 9

*In re Lululemon Sec. Litig.,*
  14 F. Supp. 3d 553 (S.D.N.Y. 2014) ................................................................................... 8

*Jun Lin v. Johnson,*
  No. 19-CV-2878 (BMC) (LB), 2019 WL 3409486 (E.D.N.Y. July 29, 2019) ......................... 11

*Keane v. Chertoff,*
  419 F. Supp. 2d 597 (S.D.N.Y. 2006) ................................................................................. 2

*Kim v. Ashcroft,*
  340 F. Supp. 2d 384 (S.D.N.Y. 2004) ............................................................................... 16

*Lee v. U.S. Citizenship & Immigr. Servs.,*
  592 F.3d 612 (4th Cir. 2010) ............................................................................................. 4

*Li v. Chertoff*,
  No. 07-CV-3836, 2007 WL 4326784 (E.D.N.Y. Dec. 7, 2007) ................................................ 17

*Logan v. Town of Windsor*,
  833 F. App'x 919 (2d Cir. 2021) .......................................................................................... 7

*Long v. Garland*,
  No. 22-CV-6652(EK), 2023 WL 6930674 (E.D.N.Y. Oct. 19, 2023) ......................................... 8

*Luckett v. Bure*,
  290 F.3d 493 (2d Cir. 2002) ............................................................................................... 6

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ............................................................................................... 6

*Martinez v. Aycock-West*,
  164 F. Supp. 3d 502 (S.D.N.Y. 2016) .................................................................................. 8

*Martin-Trigona v. Shiff*,
  702 F. 2d 380 (2d Cir. 1983) .............................................................................................. 7

*Matter of Tanahan*,
  18 I. & N. Dec., 339 (Reg. Comm. 1981) ............................................................................. 2

*Meixian Ye v. Kelly*,
  No. 17 CIV. 3010 (BMC), 2017 WL 2804932 (E.D.N.Y. June 28, 2017) .............................. 12

*INS v. Miranda*,
  459 U.S. 14 (1982) ........................................................................................................... 14

*Momin v. Jaddou*,
  113 F. 4th 552 (5th Cir. 2024) ............................................................................................ 4

*Nakka v. U.S. Citizenship & Immigr. Servs.*,
  111 F. 4th 995 (9th Cir. 2024) ............................................................................................ 4

*Nat'l Ass'n of Mfrs. v. SEC*,
  800 F.3d 518 (D.C. Cir. 2015) ........................................................................................... 17

*Next League Exec. Bd. LLC v. Biden*,
  758 F. Supp. 3d 1029 (D. Ariz. 2024) ........................................................................... 15, 18

*Palakuru v. Renaud*,
  521 F. Supp. 3d 46 (D.D.C. 2021) ..................................................................................... 17

*Parker v. Mack*,
  460 F. App'x 62 (2d Cir. 2012) .............................................................. 8

*Patel v. Garland*,
  596 U.S. 328 (2022) ................................................................ 3, 4, 5, 12

*Pearl River Union Free Sch. Dist. v. Duncan*,
  56 F. Supp. 3d 339 (S.D.N.Y. 2014) ........................................................ 8

*Pesantez v. Johnson*,
  15 CIV. 1155 (BMC), 2015 WL 5475655 (E.D.N.Y. Sept. 17, 2015) .................... 18

*Pittman v. Johnson*,
  No. 1:22-CV-1372 (GTS/ML), 2023 WL 3260189 (N.D.N.Y. Mar. 28, 2023) ........... 19

*Reddy v. CFTC*,
  191 F.3d 109 (2d Cir. 1999) ................................................................ 14

*Saleh v. Ridge*,
  367 F. Supp. 2d 508 (S.D.N.Y. 2005) .................................................. 14, 15

*Scheerer v. U.S. Att'y Gen.*,
  513 F.3d 1244 (11th Cir. 2008) .............................................................. 2

*Selevan v. N.Y. Thruway Auth.*,
  584 F.3d 82 (2d Cir. 2009) ................................................................... 8

*Shao v. USCIS*,
  No. 22-CV-6554 (VEC) (OTW), 2023 WL 3473782 (S.D.N.Y. Apr. 26, 2023) ........ 11-12

*Shashiashvili v. Garland*,
  No. 24-CV-7666 (BMC), 2025 WL 16577 (E.D.N.Y. Jan. 2, 2025) ...................... 11

*Shipping Fin. Servs. Corp. v. Drakos*,
  140 F.3d 129 (2d Cir. 1998) ................................................................. 7

*Skalka v. Kelly*,
  246 F. Supp. 3d 147 (D.D.C. 2017) ........................................................ 17

*Telecomm. Rsch. and Action Ctr. v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984) ......................................................... 14, 15, 18

*Thigulla v. Jaddou*,
  94 F.4th 770 (8th Cir. 2024) ............................................................... 13

*Tulsiyan v. Jaddou*,
    No. 22-CV-61655, 2023 WL 4879913 (S.D. Fla. July 26, 2023)............................. 13

*United States v. Blackburn*,
    461 F. 3d 259 (2d Cir. 2006) ..................................................................................... 7

*United States v. Mercurris*,
    192 F. 3d 290 (2d Cir. 1999) ..................................................................................... 7

*Viana Guedes v. Mayorkas*,
    123 F. 4th 68 (1st Cir. 2024)...................................................................................... 4

*Wang v. United States Citizenship & Immigr. Servs.*,
    No. 22-CV-149(EK), 2022 WL 17851621 (E.D.N.Y. Aug. 3, 2022) ........................ 11

*Wu v. Mayorkas*,
    No. 22-CV-4436 (WFK), 2024 WL 3557695 (E.D.N.Y. July 24, 2024)..................... 17

*Xia v. Bondi*,
    137 F. 4th 85 (2d Cir. 2025) ............................................................................. passim

*Xiaobin Xu v. Nielsen*,
    No. 18 Civ. 2048 (BMC), 2018 WL 2451202 (E.D.N.Y. May 31, 2018) ........................ 16, 18

*Yan Chen v. Nielsen*,
    No. 17 Civ. 7157 (BMC), 2018 WL 1221130 (E.D.N.Y. Mar. 8, 2018) ................... 16

*Ying Yu Liu v. Wolf*,
    No. 19 CIV 410 (PGG), 2020 WL 2836426 (S.D.N.Y. May 30, 2020)..................... 17

*Yusupov v. Mayorkas*,
    No. 21-CV-4066(EK), 2021 WL 6105720 (E.D.N.Y. Dec. 23, 2021) ...................... 11

**Statutes**

5 U.S.C. § 701(a)(1)........................................................................................................ 12

5 U.S.C. § 702................................................................................................................. 12

5 U.S.C. § 706(1)............................................................................................................. 13

5 U.S.C. §§ 701–06........................................................................................................... 1

8 U.S.C. § 1252(a)(2)(B) ............................................................................................. 3, 4

8 U.S.C. § 1252(a)(2)(D) ................................................................................................. 6

8 U.S.C. § 1255 ................................................................................................................... 2

8 U.S.C. § 1255(a) ............................................................................................ 2, 13, 15, 18

8 U.S.C. § 1571(b) ............................................................................................................. 16

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 1, 7

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1, 8, 9

Fed. R. Civ. P. 12(h)(3) ...................................................................................................... 6

Fed. R. Civ. P. 25(d) ........................................................................................................... 1

Defendants Attorney General Pamela Bondi, Secretary of Homeland Security Kristi Noem,

Director of U.S. Citizenship and Immigration Services ("USCIS") Joseph B. Edlow,[1] USCIS, and

USCIS New York City Field Office Director Zoraida Gomez (collectively, the "Government"), by

their attorney Jay Clayton, United States Attorney for the Southern District of New York,

respectfully submits this memorandum of law in support of their motion to dismiss the complaint

for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a

claim pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff Tianlin Zhang ("Zhang") filed this Complaint to compel USCIS to decide her

appeal of a decision denying her Application to Register Permanent Residence or Adjust Status

("Form I-485"), complaining that USCIS has "failed to provide any update or decision" since she

her I-485 was re-opened in early 2025. *See* Compl. ¶ 6. Zhang purports to bring this action under

the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, based on the Government's

alleged failure to provide her with "a timely and reasoned adjudication of [her] immigration

petition." Compl. at 2.

The Complaint must be dismissed as moot, because after Zhang commenced this action,

USCIS issued a Request for Evidence, asking her to submit a notarial birth certificate in support

of her I-485 application. Because USCIS is actively seeking evidence relevant to the adjudication

of Zhang's I-485 application, her effort to compel the agency to act on the application is now moot.

Even if this case were not moot, the Court would still lack subject matter jurisdiction under 8

U.S.C. § 1252(a)(2)(B)(i), which expressly strips courts of jurisdiction to review matters arising

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the above-referenced individuals are automatically substituted for Merick B. Garland, Alejandro Mayorkas, and Kika Scott as defendants in this matter.

1

from USCIS's adjudication of Form I-485 applications. Finally, even if this Court had subject matter jurisdiction (which it does not), the APA would fail on the merits. Zhang commenced this action only five months after USCIS reopened her I-485 application, which does not constitute unreasonable delay under the APA.

## BACKGROUND

### A.    Governing Statutory Provisions

#### 1.    Adjustment of Status and Limits on Judicial Review

Adjustment of status for foreign nationals in the United States is governed by 8 U.S.C. § 1255, which provides,

> The status of an alien who was inspected and admitted or paroled into the United States . . . *may* be adjusted by the Attorney General, *in his discretion* and under such regulations as he *may* prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.[2]

8 U.S.C. § 1255(a) (emphases added). Under the plain language of 8 U.S.C. § 1255(a), adjustment of status is a discretionary act. *Keane v. Chertoff*, 419 F. Supp. 2d 597, 601 (S.D.N.Y. 2006) ("the plain language of the INA labels adjustment of status a discretionary act"); *see also Matter of Tanahan*, 18 I. & N. Dec., 339, 342 (Reg. Comm. 1981) (determination to grant permanent residence under section 245 lies entirely within the Attorney General's discretion; applicant who meets the objective prerequisites for adjustment of status is in no way entitled to that relief).

---

[2] "Section 1255(a) provides that 'the Attorney General' is the government official with the authority to adjust status, 'but Congress has transferred the adjudication functions of the former Immigration and Naturalization Service (INS) to the Secretary of Homeland Security and his delegate' at the U.S. Citizenship and Immigration Services." *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1264 n.2 (11th Cir. 2011) (quoting *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1251 n.6 (11th Cir. 2008)).

Congress has placed strict limits on judicial review of the denial of discretionary relief. *See* 8 U.S.C. § 1252(a)(2)(B) (titled "Denials of Discretionary Relief). In particular, § 1252(a)(2)(B) states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, *no court shall have jurisdiction to review—*
>
> (i) *any judgment regarding the granting of relief under* section 1182(h), 1182(i), 1229b, 1229c, or *1255* [the provision governing adjustment of status] . . . .

8 U.S.C. § 1252(a)(2)(B)(i) (emphases added). Thus, § 1252(a)(2)(B)(i) "prohibits review of *any* judgment *regarding* the granting of relief under . . . § 1255." *Patel v. Garland*, 596 U.S. 328, 338 (2022) (emphasis in original). The same prohibition extends to factual findings, *id.* at 339, and applies "regardless of whether the judgment [or] decision . . . is made in removal proceedings." 8 U.S.C. § 1252(a)(2)(B).

Thus, the prohibition on judicial review applies to USCIS's discretionary decisions declining to adjust status to that of a lawful permanent resident. *Xia v. Bondi*, 137 F. 4th 85, 90–92 (2d Cir. 2025); *see Kamel v. USCIS*, No. 23-CV-10490 (AS), 2025 WL 2198926, at *2 (S.D.N.Y. Aug. 1, 2025) ("*Xia* . . . held that § 1252(a)(2)(B)(i) strips federal courts of jurisdiction to review USCIS's denial of a § 1255 adjustment-of-status application"); *D'Ambrosio v. Scott*, – F. Supp. 3d –, 2025 WL 1502936 (D. Vt. May 23, 2025) (noting holding in *Xia* that § 1252(a)(2)(B)(i) bars review of a USCIS denial of an application for adjustment of status). *Xia* addressed the principal question, left open in *Patel*, whether a decision by USCIS to deny an application for adjustment of status under § 1255 constitutes a "judgment" to which the jurisdictional bar in 1252(a)(2)(B)(i) attaches. *Xia*, 137 F. 4th at 90. Joining every other circuit to

address the question,[3] the Second Circuit answered in the affirmative. *Id.* First, looking to the plain text of the statute, the Court cited the preamble to the subsection that provides the jurisdictional bar applies "regardless of whether the judgment, decision, or action is made in removal proceedings." *Id.* (quoting 8 U.S.C. § 1252(a)(2)(B)). As USCIS is the only entity that can issue an authoritative decision on adjustment applications outside the removal context, it is therefore the only entity whose decision on those applications could fall within the scope of the "regardless" clause of § 1252(a)(2)(B)(i). *Id.* at 91. The Court therefore found that the "regardless" clause necessarily applies to decisions by USCIS. *Id.* (citations omitted).

The Second Circuit further explained that the Supreme Court's reasoning in *Patel* confirmed its conclusion. *Id.* The *Patel* decision held that § 1252(a)(2)(B)(i) foreclosed judicial review of "factual findings that underlie a denial of relief." *Id.* (citing *Patel*, 596 U.S. at 331, 333–34). Noting that § 1252(a)(2)(B)(i) had expansive reach, the Supreme Court agreed that "judgment" meant any authoritative decision, and consistent with this broad definition, § 1252(a)(2)(B)(i) did not "restrict itself to certain kinds of decisions. Rather, it prohibits review

---

[3] *See Xia*, 137 F. 4th at 90 n.5 (citing *Momin v. Jaddou*, 113 F. 4th 552, 558 (5th Cir. 2024) (holding that § 1252(a)(2)(B)(i) applied to USCIS's denial of an adjustment application); *Viana Guedes v. Mayorkas*, 123 F. 4th 68, 71 (1st Cir. 2024) ("The district court plainly lacked jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(i) to hear appellants' claims challenging USCIS' denial of their adjustment of status applications."); *Nakka v. U.S. Citizenship & Immigr. Servs.*, 111 F. 4th 995, 1008 (9th Cir. 2024) ("[B]ecause of the 'regardless' clause, § 1252(a)(2)(B)(i) must be interpreted as also encompassing judgments regarding the granting of discretionary relief that are made by USCIS and DHS outside removal proceedings."); *Hatchet v. Andrade*, 106 F. 4th 574, 582 (6th Cir. 2024) (holding that pursuant to § 1252(a)(2)(B)(i), "the district court lacked jurisdiction to review the factual findings of USCIS"); *Abuzeid v. Mayorkas*, 62 F. 4th 578, 584 (D.C. Cir. 2023); *Britkovyy v. Mayorkas*, 60 F. 4th 1024, 1028–30 (7th Cir. 2023) ("§ 1252(a)(2)(B)(i) operates to eliminate judicial review of the denial of an adjustment-of-status application by USCIS."); *Lee v. U.S. Citizenship & Immigr. Servs.*, 592 F.3d 612, 619 (4th Cir. 2010); *Commandant v. Dist. Dir., Miami Dist. (S24), USCIS*, No. 21-10372, 2024 WL 3565390, at *2 (11th Cir. July 29, 2024) (holding that "under *Patel*, section 1252(a)(2)(B)(i) stripped the district court of jurisdiction to review" the plaintiffs' challenge to USCIS's denials of their applications for adjustment of status under § 1255)).

of *any* judgment *regarding* the granting of relief under § 1255 and the other enumerated provisions." *Id.* (quoting *Patel*, 596 U.S. at 337–38). Noting that the modifier "any" meant the provision applies to judgments of whatever kind under § 1255, and not just discretionary judgments or last-in-time judgment; and "regarding" in the legal context generally had a broadening effect, ensuring the scope of the provision covers not only its subject but also matters *relating* to that subject, the Court agreed that § 1252(a)(2)(B)(i)'s jurisdictional bar "encompasses any and all decisions relating to the granting or denying of discretionary relief, including factual findings." *Id.* at 92 (quoting *Patel,* 596 U.S. at 337). Thus, the Second Circuit found that *Patel* severely undermined Xia's argument that "judgment" for purposes of § 1252(a)(2)(B)(i) included only decisions of the immigration court, and not decisions of USCIS. *Id.* The Second Circuit thus concluded, it "follows that a decision by USCIS to deny an adjustment application under § 1255 fits within this broad definition." *Id.* The Second Circuit observed that the Supreme Court in *Patel* anticipated this outcome:

> Indeed, the [*Patel*] Court acknowledged that its interpretation of § 1252(a)(2)(B)(i) could have the "consequence of precluding all review of USCIS denials of discretionary relief" because "[t]hose decisions are made outside of the removal context, and subparagraph (D) preserves review of legal and constitutional questions only when raised in a petition for review of a final order of removal. . . . While it declined to decide the reviewability of USCIS decisions, the Court suggested that foreclosing review of those decisions might not be an "unintended" consequence of its opinion, as Patel and the government framed it, but rather "consistent with Congress' choice to reduce procedural protections in the context of discretionary relief."

Id. (quoting *Patel*, 596 U.S. at 345–46). Thus, "[i]n sum, the logic of *Patel* leads ineluctably to the conclusion that § 1252(a)(2)(B)(i) bars review of a USCIS denial of an application for adjustment of status." *Id.* at 93.

### 2. Exception to the Bar on Judicial Review Applies Only to Petitions for Review Filed with the Courts of Appeals

Section 1252(a)(2)(D) preserves judicial review in limited circumstances not present here. Specifically, it permits judicial review only in the context of removal orders reviewable through a petition for review brought directly in the Court of Appeals, and not district court actions. *Xia*, 137 F. 4th at 93 (section 1252(a)(2)(D) permits judicial review of constitutional claims or questions of law only by an "appropriate court of appeals" and only "upon a petition for review" from a final order of removal); *see also Cruz-Miguel v. Holder*, 650 F.3d 189, 193 (2d Cir. 2011) ("Federal courts lack jurisdiction to review discretionary relief [under] 8 U.S.C. § 1252(a)(2)(B)(i), but [the Court of Appeals] retain[s] jurisdiction, however, to review 'constitutional claims or questions of law raised upon a petition for review' [under] 8 U.S.C. § 1252(a)(2)(D)"); *Belem v. Jaddou*, No. 21-cv-4093 (VEC), 2022 WL 1664332, at *8 (S.D.N.Y. May 25, 2022) ("even if Plaintiffs had a valid constitutional claim or were raising a question of law . . . , the federal court with subject-matter jurisdiction would be the Second Circuit, not the district court."). District courts thus lack jurisdiction to consider any "judgment," including not just discretionary judgments or last-in-time judgments, "regarding" the adjudication of a Form I-485 application.

### B    Governing Standards for Dismissal of the Complaint

### 1. Dismissal Under Rule 12(b)(1)

"'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). It is the plaintiff's burden to establish that subject matter jurisdiction exists. *Luckett*, 290 F.3d at 497. "[J]urisdiction must be shown

affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *accord APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). Where a defendant makes a factual attack on the court's jurisdiction to hear a plaintiff's claims, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno v. Wallack Ader Levithan Assoc.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996), *aff'd* 125 F.3d 844 (2d Cir. 1997) (citations omitted). When "deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015). "While the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest, . . . a pro se plaintiff still bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. . . ." *Logan v. Town of Windsor*, 833 F. App'x 919, 920 (2d Cir. 2021) (quotation marks and citations omitted).

Under Article III of the U.S. Constitution, "[w]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Fox v. Bd. Of Trs. Of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1984) (internal quotation marks and brackets omitted). An action is moot when it no longer involves any "live" issue or when "the parties lack a legally cognizable interest" in its outcome. *Hassoun v. Searls*, 976 F.3d 121, 130 (2d Cir. 2020) (internal quotation marks omitted). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F. 2d 380, 386 (2d Cir. 1983). "[T]o satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Blackburn*, 461 F. 3d 259, 261 (2d Cir. 2006) (quoting *United States v. Mercurris*, 192 F. 3d 290, 293 (2d Cir.

1999)). "In the immigration context, an 'agency's refusal to act' on an application for adjustment of status is a 'prerequisite for the existence of a case or controversy.'" *Long v. Garland*, No. 22-CV-6652(EK), 2023 WL 6930674, at \*2 (E.D.N.Y. Oct. 19, 2023) (citation omitted).

**2.      Dismissal Under Rule 12(b)(6)**

Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) should be granted when the complaint fails to allege all the required elements of a cause of action. *See Pearl River Union Free Sch. Dist. v. Duncan*, 56 F. Supp. 3d 339, 351 (S.D.N.Y. 2014); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 562 (S.D.N.Y. 2014) (granting a motion to dismiss under Rule 12(b)(6) where the defendant argued that the complaint "fail[ed] to adequately allege the key element of a . . . cause of action"). A court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Allegations that are "no more than conclusions [] are not entitled to the assumption of truth," and "'naked assertion[s]' devoid of 'further factual enhancement'" or "the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show a petitioner is entitled to relief. *Iqbal*, 556 U.S. at 678–79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 557 (2007). Nor must a court accept as true "legal conclusions" or "'a legal conclusion couched as a factual allegation.'" *Id.* at 678. A complaint prepared by a *pro se* plaintiff, although "liberally construed, must satisfy the pleading standards set forth in [*Twombly*] and [*Iqbal*]." *Parker v. Mack*, 460 F. App'x 62, 62 (2d Cir. 2012); *see also Martinez v. Aycock-West*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) ("[T]he liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law.").

In ruling on a Rule 12(b)(6) motion to dismiss, a court may consider, among other things, documents incorporated by reference or integral the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Judicial notice may be taken "of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Hesse v. Godiva Chocalatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (quotation marks and citations omitted).

## C.    Factual Background

Zhang filed an Application to Register Permanent Residence or Adjust Status ("Form I-485") on July 27, 2023. Compl. ¶ 1; Dkt. No. 1-1 at 3. On November 22, 2024, USCIS's New York City field office denied her Form I-485 after concluding that Zhang reentered the United States without a valid Advance Parole document. Compl. ¶ 2; Dkt. No. 1-1 at 5; Declaration of Lisa LaCouture ("LaCouture Decl.") ¶ 7. Zhang contends that she, in fact, had a valid Advance Parole document and that USCIS's finding was therefore erroneous. Compl. ¶¶ 2–3. Zhang filed a Motion to Reopen and Reconsider this decision by filing Form I-290B and, on January 11, 2025, the Form I-290B was granted. LaCouture Decl. ¶ 8. Zhang's Form I-485 was reopened and on July 14, 2025, was relocated to the USCIS's Albany Field Office. *Id.*

Zhang commenced this action on June 9, 2025, complaining that USCIS had "failed to provide any update or decision" on the status of her appeal. *See* Compl. ¶ 6. She claims that the Government has violated the APA, which gives her "the right to a timely and reasoned adjudication of [her] immigration petition." *Id.* at 2.

On July 17, 2025, USCIS issued an interview notice to Zhang, instructing her to appear for an interview on August 27, 2025. LaCouture Decl. ¶ 9, Ex. A. Upon further review, USCIS Supervisory Immigration Services Officer Lisa LaCouture reviewed Zhang's I-485 and determined

Zhang's application was deficient because, while it contained a medical birth certificate, her file lacked a required notarial birth certificate. LaCouture Decl. ¶ 11. Accordingly, USCIS issued Zhang a Request For Evidence to Zhang on July 31, 2025, requesting a notarial birth certificate. *Id.* ¶ 11, Ex. B. Zhang must respond by October 23, 2025. *Id.* ¶ 11, Ex. B. Because an interview may not be necessary—depending on how Zhang responds to the Request For Evidence—USCIS withdrew the August 27, 2025, interview request. *Id.* ¶ 12, Ex. C. Moreover, even if Zhang's I-485 application were otherwise complete, it cannot yet be approved by USCIS because the U.S. State Department has not yet issued visa numbers for Chinese national I-485 applicants with Zheng's priority date. *Id.* ¶ 13.

## ARGUMENT

### A.    This Case is Moot and Must Be Dismissed

The Complaint alleges that since Zheng appealed the denial of her Form I-485, USCIS "has failed to provide any update or decision" on her case. Compl. ¶ 6. But that is not true. On January 13, 2025, USCIS issued a notice of its decision to reopen her case based on her filing of Form I-290B. Dkt. No. 1-1 at 16. Further, after Zhang's commencement of this action, USCIS has taken active steps to adjudicate her reopened I-485 application. As discussed above, USCIS issued an interview notice to Zhang in July, requesting her appearance at an interview in August. LaCouture Decl. ¶ 9, Ex. A. Upon further review of her file, however, a Supervisory Immigration Services Officer learned that Zhang's I-485 application was deficient because it lacked a notarial birth certificate. *Id.* ¶ 11, Ex. B. Accordingly USCIS issued a request for evidence to Zhang on July 31, 2025, which she must respond to by October 23, 2025. *Id.* ¶ 11, Ex. B. Because an interview may not ultimately be necessary, USCIS withdrew the interview request. *Id.* ¶ 13, Ex. C.

Courts have repeatedly that when "plaintiffs seek to compel adjudication of their

application for an adjustment of their immigration status and the USCIS issues a[] [Request for Evidence], the action is moot." *Jun Lin v. Johnson*, No. 19-CV-2878 (BMC) (LB), 2019 WL 3409486, at *1 (E.D.N.Y. July 29, 2019). Even non-final actions by USCIS, such as a request for evidence, constitutes "adjudication" for purposes of mootness.  "[A] decision on the application itself is not necessary to deprive the Court of jurisdiction on mootness grounds," *Yusupov v. Mayorkas*, No. 21-CV-4066(EK), 2021 WL 6105720, at *2 (E.D.N.Y. Dec. 23, 2021), because an application to compel agency action in the immigration context becomes moot "once the agency begins to spin its bureaucratic cogs toward decision," *Wang v. United States Citizenship & Immigr. Servs.*, No. 22-CV-149(EK), 2022 WL 17851621, at *2 (E.D.N.Y. Aug. 3, 2022); *see also, e.g.*, *Yusupov*, 2021 WL 6105720, at *2  (holding that USCIS's issuance of an interview notice mooted plaintiff's action for an order compelling USCIS to "adjudicate" her adjustment of status application); *Shashiashvili v. Garland*, No. 24-CV-7666 (BMC), 2025 WL 16577, at *2 (E.D.N.Y. Jan. 2, 2025) (noncitizen's request for order compelling USCIS to "adjudicate" immigration application was moot because USCIS scheduled plaintiff's interview which "will allow plaintiff's application to move forward, granting him the relief sought in this lawsuit"); *Gomez v. Nielsen*, 301 F. Supp. 3d 91, 95 (D.D.C. 2018) (dismissing as moot noncitizen's mandamus claim and related APA claim for an order compelling USCIS to "adjudicate" his I-589 asylum application because plaintiff was scheduled for, and attended, an asylum interview).

Here, because USCIS has requested evidence from Zhang which is necessary to adjudicate her I-485 application, her APA claim seeking to compel agency action on her application is now moot and should be dismissed. *See, e.g.*, *Shao v. USCIS*, No. 22-CV-6554 (VEC) (OTW), 2023

WL 3473782, at *1 (S.D.N.Y. Apr. 26, 2023) ("Here, the agency has acted upon Plaintiff's application by issuing a RFE, which moots Plaintiff's request to compel agency action."), *report and recommendation adopted*, 2023 WL 3473783 (S.D.N.Y. May 15, 2023); *Meixian Ye v. Kelly*, No. 17 CIV. 3010 (BMC), 2017 WL 2804932, at *2 (E.D.N.Y. June 28, 2017) (dismissing APA claims as moot after USCIS issued a request for evidence and explaining that plaintiff's lawsuit "achieved [its] intended purpose" and plaintiff cannot "hold[] this lawsuit over defendants' heads like the Sword of Damocles, so that they will be incentivized to act on her application, knowing that if they do not, she can press ahead with this lawsuit.").

**B.    Even if the Case Were Not Moot, the Court Would Lack Jurisdiction Given the Jurisdiction-Stripping Provision of 8 U.S.C. § 1252(a)(2)(B)(i)**

Zhang purports to bring this case under the APA, claiming that USCIS's denial of her Form I-485 and subsequent delayed adjudication of her appeal deprived her of her right to a "timely and reasoned" decision on her application. Compl. at 2. But the APA does not apply "to the extent that . . . statutes preclude judicial review." 5 U.S.C. § 701(a)(1). Further, the APA expressly provides that "[n]othing herein . . . affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal . . . ground." 5 U.S.C. § 702. Accordingly, where Congress has expressly precluded judicial review, jurisdiction under the APA does not lie. Here, the plain language of § 1252(a)(2)(B)—"which is, after all, a jurisdiction-stripping statute"—bars judicial review of the USCIS's adjudication of Zhang's application. *Patel*, 596 U.S. at 347; *Xia*, 137 F. 4th at 91–93. Indeed, Second Circuit has unequivocally held "that § 1252(a)(2)(B)(i) bars review of a USCIS denial of an application for adjustment of status." *Xia*, 137 F. 4th at 93. Thus, even if Zhang's case were not moot—which it is—judicial review of USCIS's adjudication of her request to adjust her status is barred.

Zhang also cannot pursue any claim based on USCIS's alleged delay in deciding her I-485 application. After all, "'Congress's broad prohibition of judicial review,' . . . includes the 'process' of making a discretionary decision, thereby barring . . . claims for unreasonable delay of their I-485 applications because adjustments of status were made discretionary pursuant to 8 U.S.C. § 1255(a)." *Barad v. Noem*, No. 8:25-CV-162, 2025 WL 1725322, at *5 (D. Neb. June 20, 2025) (quoting *Thigulla v. Jaddou*, 94 F.4th 770, 774 (8th Cir. 2024)); *see also Echeverri v. USCIS*, No. 23-CV-21711-RAR, 2023 WL 5350810, at *4 (S.D. Fla. Aug. 21, 2023) ("USCIS's decisions about the pace at which it adjudicates a Form I-601A clearly fall within the realm of actions Congress prohibited district courts from reviewing." (collecting cases)); *Tulsiyan v. Jaddou*, No. 22-CV-61655, 2023 WL 4879913, at *3 (S.D. Fla. July 26, 2023) ("8 U.S.C. § 1252(a)(2)(B) bars this Court from reviewing a delay in the adjudication of pending I-485 applications."), *appeal dismissed sub nom. Tulsiyan v. USCIS*, No. 23-12464, 2024 WL 5087224 (11th Cir. Dec. 9, 2024).

## C.    Zhang Fails to State a Claim under the APA

Even if Zhang's claims were not moot, and even if 8 U.S.C. § 1252(a)(2)(B)(i) did not strip the Court of jurisdiction, her APA claim based on unreasonable delay would fail on the merits. Zhang's I-485 application was reopened in January 2025—only approximately five months before she commenced this action in June 2025. Dkt. No. 1; Dkt. No. 1-1 at 16. Zhang asserts that the delay has caused her "ongoing financial losses, emotional suffering, and uncertainty about my immigration status." Compl. ¶ 8. As explained below, these allegations do not state a valid APA unreasonable delay claim.

Under the APA, federal courts may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Courts have consistently held, however, that processing times alone—even lengthy ones—cannot support a finding of unreasonable delay. *See Espin v.*

*Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) ("[T]he Supreme Court has held that evidence of the passage of time cannot, standing alone, support such a claim [of unreasonable delay.]" (citing *INS. v. Miranda*, 459 U.S. 14, 19 (1982))). Indeed, "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Saleh v. Ridge*, 367 F. Supp. 2d 508, 512 (S.D.N.Y. 2005) (citation and quotation marks omitted).

In assessing whether a delay is unreasonable, courts "should consider the nature and extent of the interests prejudiced by delay, the agency justification for the pace of the decision, and the context of the statutory scheme out of which the dispute arises." *Reddy v. CFTC*, 191 F.3d 109, 120 (2d Cir. 1999) (citation and quotation marks omitted). Courts regularly follow the approach set forth in *Telecomm. Rsch. and Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), the so-called "*TRAC* factors":

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id*. at 80 (citations and quotation marks omitted).

Here, USCIS has not unreasonably delayed any agency action. USCIS is tasked with adjudicating hundreds of thousands of I-485 applications annually. At the end of fiscal year 2024, 515,225 I-485 applications seeking adjustments based on family status were pending. *See* www.uscis.gov/sites/default/files/document/data/DHS%20SIGNED%20REPORT_%20USCIS%20IEFA%20FY2024%20Statement%20of%20Financial%20Condition.pdf    at    10.    USCIS

generally processes these applications in the order received. *See* https://egov.uscis.gov/processing-times/ (last visited Aug. 1, 2025). The Albany-based USCIS field office, where Zhang's I-485 application is now pending, processes 80 percent of family-based I-485 applications in 14.5 months. *Id.* Here, approximately six months after Zhang's I-485 application was reopened, USCIS re-reviewed the application and requested additional information necessary to adjudicate it. LaCouture Decl. ¶¶ 8–11. Moreover, the USCIS is not even able to approve the Form I-485 at this time, because visa numbers are not yet available for Chinese nationals with Zhang's priority date. *Id.* ¶ 13; *Next League Exec. Bd. LLC v. Biden*, 758 F. Supp. 3d 1029, 1042 (D. Ariz. 2024) ("Neither USCIS nor the State Department is required to accept for processing or approve an I-485 application or issue an immigrant visa when a visa number is not available to the applicant."); 8 U.S.C. § 1255(a)–(b) (visa number must be available both at the time the applicant files the I-485 application and at the time of approval).

District courts within the Second Circuit have found that much longer delays than the few months at issue here since the re-opening (or even the two years since the Form I-485 was filed) were insufficient to warrant relief under the APA. *See, e.g.*, *Aydemir v. Garland*, No. 22-CV-100 (PAC), 2022 WL 4085846, at *4 (S.D.N.Y. Sept. 6, 2022) ("[C]ourts generally conclude that a green card delay of less than four years is reasonable on its face."); *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) (three-year delay in adjudicating an asylum application not unreasonable); *De Oliveira v. Barr*, No. 19 Civ. 1508 (ENV), 2020 WL 1941231, at *4 (E.D.N.Y. Apr. 22, 2020) (more than four-year delay not unreasonable); *Espin*, 381 F. Supp. 2d at 266 (plaintiff failed to state a claim where Form I-485 had been pending for three years); *Saleh*, 367 F. Supp. 2d at 513 (finding that a "delay of almost five years" was not unreasonable and recognizing no "compelling rationale for why he should not be made to wait his turn for adjudication"); *Gong*

*v. Duke*, 282 F. Supp. 3d 566, 568 (E.D.N.Y. 2017) ("[T]he mere delay of less than four years is an inadequate ground to grant either mandamus or APA relief." (citing cases)); *Xiaobin Xu v. Nielsen*, No. 18 Civ. 2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) ("Plaintiff's application has been pending for a little less than five years, and while a substantial amount of time, it is not an unreasonable delay."); *Yan Chen v. Nielsen*, No. 17 Civ. 7157 (BMC), 2018 WL 1221130, at *2 (E.D.N.Y. Mar. 8, 2018) (delay of four-and-a-half years to adjudicate plaintiff's application for an adjustment of her immigration status to permanent resident did not justify APA or mandamus relief).

When analyzing the first *TRAC* factor, courts have found that USCIS's practice of "generally processing [I-485 applications] in the order in which they are received" is an acceptable rule of reason. *Elnaggar v. Garland*, No. 23-CV-10850 (GS), 2025 WL 70386, at *5 (S.D.N.Y. Jan. 10, 2025); *see also Aydemir*, 2022 WL 4085846, at *4 ("'Courts widely recognize that a first-in, first-out method counts as a rule of reason' governing an agency's immigration adjudication."). Zhang has certainly alleged no contrary facts and "has thus not plausibly alleged that USCIS's processing of [her] application is not governed by a rule of reason for purposes of the first *TRAC* factor." *Elnaggar*, 2025 WL 70386, at *6.

Concerning the second *TRAC* factor, Congress has not dictated a timetable or commanded a speed with which USCIS should be adjudicating Forms I-485. *See, e.g.*, *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[T]here is no statutory or regulatory deadline by which the CIS *must* adjudicate an application."). All that Congress has done is state that its "sense [is] . . . that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," 8 U.S.C. § 1571(b); however, this general statement of intent does not establish a timeframe by which USCIS is required to adjudicate the forms at

issue here because "a sense of Congress" does not create an enforceable obligation, *see, e.g.*, *Li v. Chertoff*, No. 07-CV-3836, 2007 WL 4326784, at *5 (E.D.N.Y. Dec. 7, 2007) (courts have held that the "use of the terms 'should' and 'the sense of Congress' indicate that the statute is merely precatory" and no enforceable right is created.); *Bondarenko v. Chertoff*, No. 07 mc 00002 (WMS), 2007 WL 2693642, at *8 n.7 (W.D.N.Y. Sep. 11, 2007) ("Respondents argue, and this Court agrees, that this language is not mandatory. It expresses a goal or expectation, not a requirement."); *see also Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 529 n.26 (D.C. Cir. 2015) (noting the First, Third, and Ninth Circuits, have treated similar language as "precatory" and "a statement of opinion," rather than "a statement of fact"). This reading of § 1571(b) makes sense because "Congress has given the agencies wide discretion in the area of immigration processing." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51–52 (D.D.C. 2021) (citing *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)). The second *TRAC* factor thus favors the Government.

The third and fifth *TRAC* factors involve evaluation of the impact of the delay on human health and welfare and "require the Court to examine the nature of the interests prejudiced by delayed agency adjudication." *Ying Yu Liu v. Wolf*, No. 19 CIV. 410 (PGG), 2020 WL 2836426, at *9 (S.D.N.Y. May 30, 2020). Zhang asserts that the delay has caused her "ongoing financial losses, emotional suffering, and uncertainty about my immigration status." Compl. ¶ 8. "Beyond these vague and conclusory allegations, . . . [she] fails to allege in her Complaint specific harm she has suffered related to human health and welfare or to articulate other interests prejudiced by the delay." *Wu v. Mayorkas*, No. 22-CV-4436 (WFK), 2024 WL 3557695, at *4 (E.D.N.Y. July 24, 2024). Moreover, this "sort of prejudice" is "inherent" to the application process. *Aydemir*, 2022 WL 4085846, at *5. The third and fifth factors do not favor Zhang.

Concerning the fourth *TRAC* factor, granting Zhang expedited review would only advance her application at the expense of other applicants. Judicial intervention here would result in unwarranted "line-skipping" and encourage the expectation that applicants who file a lawsuit will obtain preferential treatment in the adjudication process (thus potentially leading to an increase in similar litigation). *See Gong*, 282 F. Supp. 3d at 569 ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage."); *Pesantez*, 2015 WL 5475655, at *3-4 (concluding that "the facts of this case do not counsel in favor of a remedy that would, if it did anything, move plaintiff's application to the front of the line at the expense of other applicants whom she has not alleged are less deserving of prompt adjudication"; the relief sought by the plaintiff "would further incentivize defendants to prioritize those asylum applicants who have the wherewithal to retain private counsel and to bring suit in District Court"); *Xiaobin Xu*, 2018 WL 2451202, at *2 (finding plaintiff's case premature when other applicants have waited longer than plaintiff and to grant him priority would push those other applicants further back when the only difference between them and the plaintiff is that has brought a federal lawsuit). In addition, USCIS is unable to approve Zhang's I-485 at this time because a visa number for her is unavailable, and thus expedited review would be of no benefit to Zhang. LaCouture Decl. ¶ 13; *Next League Exec.*, 758 F. Supp. 3d at 1042; 8 U.S.C. § 1255(a)–(b). Thus, the Court should find that this *TRAC* factor favors the Government.

The sixth and final *TRAC* consideration is that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. This factor is neutral, as Zhang has not alleged nor does the record

demonstrate any "impropriety" on the part of the government, and courts need not consider it, were it even present.

In sum, under a TRAC factor analysis, Zhang has failed to make the threshold showing for a claim of unreasonable delay, and the Court should dismiss her APA claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action in its entirety without leave to replead. *See, e.g.*, *Pittman v. Johnson*, No. 1:22-CV-1372 (GTS/ML), 2023 WL 3260189, at *4 (N.D.N.Y. Mar. 28, 2023) (dismissing without prejudice but without leave to replead where "leave to replead would be futile because this Court lacks subject matter jurisdiction").

Dated: New York, New York
      August 12, 2025

                        Respectfully submitted,

                        JAY CLAYTON
                        United States Attorney for the
                        Southern District of New York,
                        *Attorney for Defendants*

By:    /s/ Mark Osmond
                        MARK OSMOND
                        Assistant United States Attorney
                        86 Chambers Street, 3rd Floor
                        New York, New York 10007
                        Tel.: (212) 637-2713
                        Email: mark.osmond@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 6,286 words.